UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

MARIE NICOLE DAYANA CADEAU, individually and
on behalf of all others similarly situated,   **CLASS ACTION**

    Plaintiff,   **JURY TRIAL DEMANDED**

v.

RENT-A-CENTER, INC.,

    Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Marie Nicole Dayana Cadeau brings this class action against Defendant Rent-A-Center, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. To promote its goods and services, Defendant engages in unsolicited text messaging, including to individuals who have registered their telephone numbers on the National Do-Not-Call Registry, and to those who have not provided Defendant with their prior express written consent as required by the FTSA.

1

3. Defendant's telephonic sales calls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and invasion of their privacy.

4. Through this action, Plaintiff seeks an injunction and statutory damages on behalf of herself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

**PARTIES**

5. Plaintiff is, and at all times relevant hereto was, a citizen and resident of Miami-Dade County, Florida.

6. Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

7. Defendant is, and at all times relevant hereto was, a foreign corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

**JURISDICTION AND VENUE**

8. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367.

10. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant initiated and directed telemarketing and/or advertising text messages into Florida. Specifically, Defendant initiated and directed the transmission of unsolicited advertisement or telemarketing text messages to Plaintiff's

cellular telephone number to sell goods, services or products in Florida. Plaintiff's telephone number has an area code that specifically coincides with locations in Florida, and Plaintiff received such messages while residing in and physically present in Florida.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

12. Commencing on or about March 15, 2022, Defendant sent telephonic sales calls to Plaintiff's cellular telephone number, including the following text message calls:

> **Text Message**
> Tue, Mar 15, 1:21 PM
>
> Hi, this is Anay from Rent A Center wanting to let you know that This weekend only at Rent-A-Center, $3.17 pays until 3/26 on any new rental purchase agreement. On 3/26, regular rental rates will apply. Tax and optional fees may be deferred to 1st renewal payment. Always a pleasure to assist you !!
>
> Fri, Mar 25, 10:01 AM
>
> Own your products sooner with Rent-A-Center's 6 months same as cash option + create bundles to get what you need. Reply "YES" to chat! Txt STOP to Opt Out.
>
> Fri, Mar 25, 11:44 AM
>
> Hello,! This is Anay from Rent A Center .We want to share the exciting news about our new promo that offers savings off 20% or more when you bundle items!. We wanted to make sure you heard before our most popular items sell out !!

> exciting news about our new promo that offers savings off 20% or more when you bundle items!. We wanted to make sure you heard before our most popular items sell out !!

Mon, Apr 4, 6:26 PM

> Hi!!, This is Anay This week starting on Thursday only at Rent-A-Center, $4.16 pays until 4/16 on any new rental purchase agreement. Call me at (305) 251 4177 or replay to this text to help you get what you need!!! Here always ready to help you!!!

Tue, Apr 5, 10:02 AM

> This weekend only at Rent-A-Center, $4.16 pays until 4/16 on any new rental purchase agreement. On 4/16, regular rental rates will apply. Tax and optional fees may be deferred to 1st renewal payment.? Have time to chat? Reply "Yes" or Txt STOP to Opt Out.

Tue, Apr 5, 7:31 PM

> Hi Marie,
> Jack with Rent-A-Center here, just

> Hi Marie,
> Jack with Rent-A-Center here, just letting you know about our promotion starting this Thursday, April 7th through the 9th. Believe it or not, but all prices have been dropped down, and you could take it home with as little as $4.16, lets not forget about our same day delivery, and if you want bigger savings, we have inventory that have been sitting in our store for a while, you could save up to 50% off the full price, if you want more information call now at 305 251 4177 before they sell out.
> Could not find anything you like in our page? Now we do special orders for those things that we don't normally carry, with the same 6 months as cash, and same benefits. Call now and find out more!!!

Thu, Apr 14, 10:01 AM

> Hi there! Discover our Spring Black Friday savings on all your tech needs at Rent-A-Center. Plus, use your $50 credit. Reply "YES" to chat or STOP to Opt Out.

> 6 months as cash, and same benefits. Call now and find out more!!!

Thu, Apr 14, 10:01 AM

> Hi there! Discover our Spring Black Friday savings on all your tech needs at Rent-A-Center. Plus, use your $50 credit. Reply "YES" to chat or STOP to Opt Out.

Thu, Apr 14, 1:41 PM

> Hi !!, This is Anay with Rent A Center excited with the the News for you!!, Because you are special for us. 5 DE MAYO PROMOTION.
> 1. 50 % OFF original price of total cost on anything in the store that is 90 days in the inventory.
> 2. Double offer! ($100 off front, and $100 off back in the total cost of your agreement.
> Replay to this text or call the store to reserve you merchandise!!!
> ( 305) 251 4177

Tue, May 3, 12:10 PM

> Celebrate Cinco de Mayo at Rent-A-Center, where select premium items are $29.99/wk (rent) or less

6

> Replay to this text or call the store to reserve you merchandise!!! ( 305) 251 4177

Tue, May 3, 12:10 PM

> Celebrate Cinco de Mayo at Rent-A-Center, where select premium items are $29.99/wk (rent) or less, 5/2-5/7 + use your $50 return credit. And this weekend only $5 pays any new agreement until 5/14. On 5/14, regular rental rates apply. Tax and optional fees may be deferred to 1st renewal payment. Reply for details. Txt STOP to opt out.

Tue, May 3, 2:13 PM

> Hey, Jack here with Rent-A-Center bringing you our latest promotion. Cinco de Mayo is here, and we have dropped our premium items to $29.99 or less, and better yet, you only have to pay $5 down to take it home today, and no more payments until May 14th. Call your store now and get what you need today at 305 251 4177, and one of our representatives will be happy to help you!

> 5/2-5/7 + use your $50 return credit. And this weekend only $5 pays any new agreement until 5/14. On 5/14, regular rental rates apply. Tax and optional fees may be deferred to 1st renewal payment. Reply for details. Txt STOP to opt out.

Tue, May 3, 2:13 PM

> Hey, Jack here with Rent-A-Center bringing you our latest promotion. Cinco de Mayo is here, and we have dropped our premium items to $29.99 or less, and better yet, you only have to pay $5 down to take it home today, and no more payments until May 14th. Call your store now and get what you need today at 305 251 4177, and one of our representatives will be happy to help you!

Thursday 5:25 PM

> Hi, this is Anay with Rent A Center. Unlock instant approval and get the big brands you want at Rent-A-Center today! Plus, use your credit with us. Can we chat now? or receive a phone call?.

13. The purpose of Defendant's telephonic sales calls was to solicit the sale of Defendant's goods and/or services.

14. Plaintiff registered her number on the National Do-Not-Call Registry on or about May 13, 2021.

15. Plaintiff utilizes her cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

16. Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

17. Plaintiff has never had any type of business relationship with Defendant.

18. Plaintiff has never made any type of inquiry to Defendant.

19. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

20. Given Defendant's use of generic text messages to solicit consumers, Plaintiff is informed and believes that Defendant caused similar telephonic sales calls to be sent to at least 50 individuals.

21. The impersonal and generic nature of Defendant's text messages, coupled with their frequency, demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

22. To send the text message, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit thousands of text messages automatically and without any human involvement.

23. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

24. The Platform has the capacity to select and dial numbers automatically from a list of numbers.

25. The Platform has the capacity to schedule the time and date for future transmission of text messages.

26. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

27. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

28. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

29. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

30. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

31. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

32. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

33. Compliance with the FTSA will not result in Defendant having to cease its business operations.

34. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

35. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

36. Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

37. Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection or dialing of telephone numbers.

38. More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection or dialing of telephone numbers.

39. Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

40. Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Classes that Plaintiff seeks to represent is defined as:

> **DNC Class**: **All persons in the United States who from four years prior to the filing of this action (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one text message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding Defendant's property, goods, and/or services; (5) who did not purchase or transact business with Defendant during the eighteen months immediately preceding the date of the first message; and (6) who did not contact Defendant during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant.**
>
> **FTSA Class**: **All persons in Florida who, (1) were sent a telephonic sales call regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**

41. Defendant and its employees or agents are excluded from the Class.

**NUMEROSITY**

42. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to at least 50 consumers. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

43. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

44. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

> (a) Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;

(b) Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

(c) Whether Defendant sent solicitations to individuals who had registered their telephone numbers on the National Do-Not-Call Registry;

(d) Whether Defendants maintain an internal do-not-call list and instruct their employees on how to use the list; and

(e) Whether Defendant is liable for damages, and the amount of such damages.

45. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

46. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

47. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

48. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of

individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

49. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**Violations of 47 U.S.C. § 227(c) and 64.1200(c)**
**(On Behalf of Plaintiff and the DNC Class)**

50. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

51. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

52. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

53. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

54. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

55. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

56. As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

## COUNT II
### Violation of Fla. Stat. § 501.059
**(On Behalf of Plaintiff and the FTSA Class)**

57. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

58. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

59. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

60. "Prior express written consent" means an agreement in writing that:

   1. Bears the signature of the called party;

   2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

   3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

   4. Includes a clear and conspicuous disclosure informing the called party that:

      a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

      b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

61. Defendant failed to secure prior express written consent from Plaintiff and the FTSA Class members.

62. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the FTSA Class members without Plaintiff's and the FTSA Class members' prior express written consent.

63. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the FTSA Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

64. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and FTSA Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

65. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT III
### Injunctive Relief Pursuant to 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)
**(On Behalf of Plaintiff and the DNC Class)**

66. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

67. Pursuant to section 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the DNC Class members from Defendant's unsolicited calls and practices.

68. Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the DNC Class members.

69. Plaintiff and the Internal Class members will suffer irreparable harm if Defendants are permitted to continue their practice of violating 47 C.F.R. § 64.1200(c).

70. The injuries that the Plaintiff and the DNC Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

71. The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

72. Accordingly, Plaintiff and the DNC Class members seek an injunction requiring Defendant to regularly scrub its database of telephone numbers against the National Do-Not-Call Registry before sending any text message solicitations.

73. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT IV**
**Injunctive Relief Pursuant to Fla. Stat. § 501.059(10)(a)**
**(On Behalf of Plaintiff and the FTSA Class)**

74. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 49 as if fully set forth herein.

75. Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the FTSA Class members from Defendant's unsolicited calls and practices.

76. Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Class members.

77. Plaintiff and the FTSA Class members suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

78. The injuries that the Plaintiff and the FTSA Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

79. The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

80. Accordingly, Plaintiff and the FTSA Class members seek an injunction requiring Defendant to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

81. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA and/or TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

DATED: May 18, 2022

Respectfully Submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**THE LAW OFFICES OF JIBRAEL S. HINDI**
Jibrael S. Hindi, Esq.
Florida Bar No. 118259
110 SE 6th Street
Suite 1744
Ft. Lauderdale, Florida 33301